UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| NANETTE RANDOLPH, | Case No.: 2:18-cv-00238-APG-NJK |
|---|---|
| Plaintiff | **Order on Motions for Summary Judgment** |
| v. | [ECF Nos. 51, 52, 60] |
| JOVITA CARRANZA,[1] Administrator, U.S. Small Business Association, | |
| Defendant | |

Nanette Randolph sues her former employer, the U.S. Small Business Administration (SBA), for discrimination based on age, race, and sex; for retaliation; and for failing to reasonably accommodate her disability. She moves for partial summary judgment on her failure to accommodate claim. The SBA moves for summary judgment on all of Randolph's claims. It also moves for leave to file supplemental authority, directing me to a recent case from the Supreme Court of the United States. For the following reasons, I grant the SBA's motion for summary judgment, I deny as moot the SBA's motion for leave to file supplemental authority, and I deny Randolph's motion for partial summary judgment.

**I. BACKGROUND**

Randolph started working for the SBA in its Nevada District Office in Las Vegas in 1998. ECF No. 52-2 at 7. She held different positions, including a stint with the Arizona District Office before returning to Las Vegas in 2010 to work on the 8(a) program as a Business Opportunity Specialist (BOS). *Id.* at 8-11. The 8(a) program is a nine-year business

---

[1] I direct the clerk of court to substitute Jovita Carranza for Linda McMahon as the respondent, Administrator of the U.S. Small Business Association, on the docket for this case. *See* Federal Rule of Civil Procedure 25(d).

development program through which the SBA assists socially and economically disadvantaged small businesses with their business plans and provides guidance on obtaining federal contract opportunities. ECF Nos. 52-2 at 8-9; 52-3 at 3.  From 2010 to May 2015, Randolph was allowed to telework two days per week, though the SBA could terminate the telework arrangement at any time. ECF Nos. 52-2 at 18-19; 51-27 at 22, 42.

In April 2014, Randolph was promoted to Lead Business Opportunity Specialist (LBOS). ECF No. 52-2 at 15.  In that role, she was responsible for "providing guidance and business development assistance for a portfolio of small business firms" as well as promoting and marketing SBA programs and recruiting and training small businesses interested in receiving government contracts. ECF No. 51-3 at 2-4.  Randolph was the only employee working on the 8(a) program until Barry Van Orden was hired in November 2013 as a BOS. ECF Nos. 52-3 at 2, 4; 52-2 at 11-12.  As LBOS, Randolph was tasked with mentoring Van Orden, though Van Orden found working with Randolph to be difficult. ECF Nos. 52-3 at 4; 52-2 at 14, 16.  He felt that she provided little support and mentorship with the 8(a) program. ECF No. 52-3 at 4.

During the times relevant to this case, Robert Holguin was the District Director of the Nevada Office and Eugene Cornelius was the Deputy Associate Administrator of the Office of Field Operations of the SBA. ECF No. 51-2 at 4.  Around October 2014, Holguin interviewed and hired Daniel Lucero for the Deputy District Director role. ECF Nos. 52-2 at 17; 54-5 at 2.  Lucero previously worked in the SBA's North Carolina District Office, including on the 8(a) program. ECF No. 52-11 at 10-12.  Soon after Lucero was hired, Randolph emailed Cornelius on October 14, 2014 about her concerns regarding preferential treatment in the hiring of Hispanic men in the Nevada office. ECF No. 54-5 at 2-3.  Specifically, she noted that "[b]etween fiscal years 2013-2014 alone, three out of four hires have gone to Hispanic men, age 65+ and with

military ([N]avy) backgrounds" and that the recent Deputy District Director position went to a Hispanic male. *Id.* at 2.  Cornelius responded that he was "looking into it"; he later testified that he went to Human Resources (HR), investigated the hiring selection process, and found no irregularities. *Id.*; ECF No. 52-17 at 9-10.

Lucero stated that within the first month of his employment he began having concerns about the 8(a) program. ECF No. 52-11 at 14.  Files were not kept up to date, business plans and financial reports were missing, and "just a lot of things weren't being done." *Id.*  Lucero brought the problems to Holguin's attention. *Id.* at 17.  Holguin was concerned that the office would be receiving an internal audit soon, so in February or March 2015 he put together a "strike force" to review the program. *Id.* at 17; ECF No. 56-20 at 4.  The group consisted of Lucero, Randolph, Van Orden, Tom Martin (a lender relations specialist), and Sabrina Abousaleh (an administrative assistant). ECF Nos. 52-11 at 18; 52-3 at 5-6.  However, Randolph went on extended leave in 2015 and Van Orden focused on the day to day activities of the program, so Lucero, Martin, and Abousaleh conducted most of the review. ECF Nos. 52-3 at 6; 52-20 at 4-5, 7.

The review discovered missing required financial documents, tax returns, welcome letters, evidence of site visits, and annual review documentation. ECF No. 52-3 at 6.  Further, several firms had to be removed from the program due to eligibility problems. *Id.* at 7.  And, according to Van Orden, the hardcopy files were very disorganized. *Id.*  Randolph stated that she had discussed issues with the 8(a) program since 2010 and that Holguin was aware that the files needed to be updated since he started working in the office in 2012. ECF No. 54-6 at 12-13.  She also stated, "the goal has always been to hire someone to assist the 8(a) division to update those files." *Id.*  Subsequently, Van Orden was instructed in February 2015 to seek guidance from

Lucero instead of Randolph so that there was no conflicting information on how to correct the 8(a) program. ECF Nos. 52-3 at 8; 54-7 at 5.

The problems with the 8(a) program were reflected in Randolph's January 2015 quarterly evaluation. *See* ECF No. 52-19.  In years prior, Randolph received high performance ratings. *See* ECF No. 54-3 at 28, 35, 63, 87 (receiving between 4.6 and 5.0 out of 5.0 from 2011 to 2014). On April 15, 2015, Randolph contacted her EEO Counselor, alleging she was discriminated against on the basis of race and sex, was subjected to a hostile work environment, and was retaliated against. ECF Nos. 54-7 at 3-4; 52-2 at 28.  She alleged that since October 2014, Holguin "harassed and demanded that Randolph organize files from 2010 and put them in the file room" and that the demands started after Holguin was investigated for using government funds to interview Lucero. ECF No. 54-7 at 4.  She stated that Holguin believed she had reported him, though another employee reported the conduct. *Id.*  Examples of the alleged harassment included "minimizing the importance of [Randolph's] job position," blaming Randolph for the 8(a) program deficiencies in front of her peers, removing her job responsibilities by having Van Orden report to Lucero instead of her, and receiving a poor quarterly performance review. *Id.* at 5-6.  Randolph also testified that she could not log into the main database, BDMIS, to complete her work from February to March 2015, that she believed Lucero requested that her access be denied, and that Holguin failed to rectify the situation. ECF No. 54-6 at 32-37.

On May 11, 2015, Holguin temporarily suspended Randolph's telework schedule "until such a time that our 8(a) program is in full compliance and our 8(a) annual reviews are 90% or higher of their expected completion dates." ECF No. 52-22 at 2.  In his email, he stated that "all 8(a) work will be required to be performed in the office." *Id.*  In October 2015 Randolph

4

amended her EEO complaint to include as adverse actions losing her telework arrangement and a change in her position description. ECF No. 56-34 at 2.

Randolph soon began taking various forms of leave because she felt subjected to harassment and a hostile work environment. ECF No. 52-2 at 19. She went on leave from May 4, 2015 until December 22, 2015. *Id.* at 19-20. During that time, she treated with clinical psychologist Dr. Pratt, who diagnosed her with suffering from general anxiety disorder and situational anxiety. *Id.* at 29. Dr. Pratt sent multiple emails over the months to Randolph's supervisors, assisting with her Family and Medical Leave paperwork and seeking to find work solutions such as a 100% telework agreement or reassignment to a different position within the SBA, all in hopes of relieving her situational anxiety. *See* ECF Nos. 52-27; 51-4. He also referred Randolph to a physician, Dr. Anwar, who wrote a letter on her behalf stating that a 100% telework agreement would alleviate her problem. ECF No. 52-27 at 2.

Randolph first sought to reinstate her fixed telework schedule and return to the office in August 2015. ECF No. 52-24 at 2. However, Holguin denied Randolph's request to reinstate her fixed telework schedule due to efforts to get the 8(a) program in compliance. ECF No. 52-25 at 2-3. He noted that "[u]ntil such time that we catch-up on our backlog, scheduled telework is suspended for the entire staff." *Id.* at 3. Randolph then sought a 100% telework arrangement as a reasonable accommodation. ECF No. 52-26 at 2. Her accommodation request was reviewed by Holguin, Cornelius, and an independent agency through an interagency agreement, the Federal Occupational Health Service (FOH). *See* 52-30. The SBA and the FOH determined that the medical information provided was insufficient to support her accommodation request. *Id.* at 14. While the FOH was reviewing Randolph's request, however, Cornelius offered to allow her to have two fixed telework days per week for six months. *Id.* at 9. Accordingly, Randolph returned

to work on December 22, 2015 with her two-day per week telework schedule. ECF No. 52-2 at 21-22.  Additionally, Randolph sought reassignment as an alternative accommodation. ECF No. 51-28 at 2.  Cornelius testified that he never received Randolph's request or resumé in support of a job reassignment and that, regardless, there were no vacant positions available in the commuting area for reassignment. ECF No. 52-17 at 20-24.  He relayed this information to Randolph via telephone. *Id.* at 24.

After hearing from the FOH and consulting with HR and the legal department, Cornelius rescinded Randolph's telework arrangement in March 2016. ECF No. 52-2 at 24.  Randolph, with advice from Dr. Pratt, did not go back to work, coordinated her resignation date based on leave she had, and terminated her employment with the SBA in April 2016. *Id.*

Randolph commenced this suit against the SBA in February 2018. ECF No. 1.  In her complaint, she alleges four causes of action: (1) discrimination in federal employment in violation of the Rehabilitation Act; (2) retaliation in violation of Title VII; (3) age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA); and (4) discrimination on the basis of race and sex in violation of Title VII.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence

of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Timeliness of Randolph's Claims

The SBA contends that Randolph is time-barred from recovering on several of the alleged incidents that make up her claims because she did not contact an EEO counselor within 45 days of each incident as required to exhaust her claims. ECF No. 52 at 9-10. Randolph first contacted an EEO Counselor on April 15, 2015. Thus, the SBA argues she is time-barred from recovering on incidents that occurred before March 1, 2015, including: (1) Holguin's comment during a January 2015 staff meeting asking why Randolph was still working after 31.5 years; (2) Randolph's January 2015 low performance rating; (3) Van Orden notifying Randolph that Holguin told him not to accept any assignments from her in February 2015; (4) portions of Randolph's allegations that she could not access the BDMIS database which inhibited her ability to do her job; and (5) portions of Randolph's allegations that her LBOS job duties and responsibilities were removed. *Id.* at 10.

Randolph responds that a hostile work environment claim constitutes a single unlawful employment practice and therefore her allegations were timely brought to the EEO Counselor. ECF No. 53 at 5. The SBA replies that Randolph did not plead a hostile work environment

claim, but rather asserts retaliation and discrimination, so each alleged act must occur within the 45-day period. ECF No. 58 at 3-5.

A federal employee must exhaust all administrative remedies before bringing discrimination claims against her employer. *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003). Federal regulations require that Randolph consult with an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory" to try to informally resolve the dispute short of filing a complaint. 29 C.F.R. § 1614.105(a) and (a)(1). Although the regulation "does not carry the full weight of statutory authority," failure to comply with this pre-filing exhaustion requirement is "fatal to a federal employee's discrimination claim." *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002).[2]

Randolph alleges she was subject to discrimination and retaliation based on incidents dating back to January 2015, but it is undisputed that she contacted the EEO Counselor on April 15, 2015. ECF Nos. 54-7 at 3-4; 52-2 at 28. Accordingly, any incidents that occurred prior to March 1, 2015 are barred due to failure to exhaust. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002) (noting that a discrete act occurred on the day it happened and that "[e]ach discriminatory act starts a new clock for filing charges alleging that act"). Because Randolph's only allegation of age discrimination occurred during a staff meeting in January 2015, I grant the SBA's motion as to Randolph's ADEA claim. In doing so, I need not consider

---

[2] The 45-day deadline is an administrative "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) (referring generally to the limitations period under Title VII); *see also* 29 C.F.R. § 1614.105(a)(2) (stating that the complainant will not be required to comply with the filing period if she can show that she "was not notified of the time limits and was not otherwise aware of them"). However, Randolph makes no case for waiver here.

8

the SBA's motion for leave to file supplemental authority related to the ADEA claim, so I deny that motion as moot.

Randolph's complaint does not assert a hostile work environment claim. *See* ECF No. 1. The complaint states that Dr. Pratt determined she was subjected to a hostile work environment, but it does not plead facts to demonstrate what behavior, and by whom, created a hostile work environment; whether the harassment was based on race, sex, age, or some other protected class; or whether such a claim was separate or part of her retaliation claim. *Id.* Randolph argues that she complained to the EEO about "a series of retaliatory adverse personal actions" and that those actions were investigated to determine whether she was subjected to a hostile work environment. ECF No. 53 at 5. The SBA replies that Randolph did not plead facts showing a plausible claim for a hostile work environment based on her race, gender, or age. ECF No. 58 at 4.

Randolph has not shown that she was subjected to unwanted conduct based on her race, sex, or other protected class that "was sufficiently severe or pervasive to alter the conditions of her employment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1109 (9th Cir. 2008). Instead, she has presented a series of discriminatory acts that are divisible. *Morgan*, 536 U.S. at 105 ("We hold that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."); *see also Lyons*, 307 F.3d at 1105, 1108 (holding appellants' Title VII claims based on a pervasive pattern of discrimination could proceed only on incidents that occurred within the 45-day limitations period). Accordingly, Randolph may proceed with incidents that occurred on or after March 1, 2015. However, she may use the time-barred incidents as background evidence for her discrimination and retaliation claims. *Lyons*, 307 F.3d at 1110-11.

/ / / /

9

### B. Rehabilitation Act

The Rehabilitation Act protects an "otherwise qualified individual with a disability" from discrimination solely because of her disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "In determining whether a federal agency has violated the Rehabilitation Act, the standards under Title I of the Americans with Disabilities Act ('ADA') apply." *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000). To establish a prima facie case, a plaintiff must demonstrate the she is (1) an individual with a disability, (2) otherwise qualified, and (3) subject to discrimination because of her disability. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007). Discrimination "includes an employer's not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *US EEOC v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) (alteration in original) (internal quotations and emphasis omitted).

"A disability is 'a physical or mental impairment that substantially limits one or more major life activities of [the] individual [who claims the disability],' or 'a record of such an impairment,' or 'being regarded as having such an impairment.'" *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (citing 42 U.S.C. § 12102). The ADA provides a nonexhaustive list of major life activities, including caring for oneself, concentrating, thinking, and working. *Id.*

The SBA argues that Randolph is not disabled as defined by the Act because situational anxiety related to her office environment does not render her unable to work in a broad category of jobs. ECF No. 52 at 11. It points to her testimony where she was asked if she had any

limitations or impairments other than the office environment and Randolph responded "No." *Id* at 12 (citing Randolph's deposition testimony, ECF No. 52-2 at 27). And it argues that Randolph's doctors acted more like lawyer-advocates based on subjective information rather than doctors diagnosing a disabling condition. *Id.* at 12-13. Randolph responds that a reasonable jury could conclude that her impairment substantially impacted her major life activity of working because Dr. Pratt diagnosed her with situational anxiety. ECF No. 53 at 13-14.

By Randolph and her doctors' admissions, her anxiety was "situational" and related only to her current workplace environment. Temporary impairment based on work-related stress does not establish a mental impairment that substantially impacts a major life activity. *See Hosea v. Donley*, 584 F. Appx. 608, 611 (9th Cir. 2014) ("The district court correctly determined that Hosea failed to establish that he had a disability because his doctors found him only temporarily unable to work based on acute work related stress from July 13, 2010, through September 25, 2010."); *Sanders v. Arenson Prod., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (noting "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities").

Even if Randolph could establish that she is disabled as defined by the Act, she has not demonstrated that she was otherwise qualified for her position. An individual is qualified if "with or without reasonable accommodation, [she] can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8). "The court first examines whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position. The court then considers whether the individual can perform the essential functions . . . with or without a reasonable accommodation." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citing *Bates*, 511 F.3d at 990). The employee

11

retains the burden of proof in making her prima facie case, but the employer has the burden of production "in establishing what job functions are essential." *Id.* To meet this burden, the employer "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact,* would support a finding favorable to the defendant." *Id.* (emphasis in original) (quotation omitted). In *Samper*, the court expressed that some jobs require physical attendance as an essential function of employment. *Id.*

Here, the SBA has presented evidence that the 8(a) program needed to be brought into compliance. The files were not being kept up to date and the physical files maintained in the office were disorganized. Randolph herself noted that she had been discussing issues with the program as far back as 2010. The SBA also retained Dr. Jay Finkleman as an expert in Human Resources management, who opined that Holguin and Lucero demonstrated why reduced telework was necessary to reach the office's goals and properly relayed that information to Randolph. *See* ECF No. 56-35. And Van Orden stated the he did not have a fixed telework arrangement (nor did he believe anyone else in the office apart from Randolph had such an arrangement) and rarely used or asked for ad hoc telework, so he was physically present in the office to work on the 8(a) program. ECF No. 56-3 at 8. Thus, the SBA has met its burden of establishing that physical presence in the office was an essential function of employment for someone, like Randolph, who was working on the 8(a) program.

While it may not have been necessary to require full-time physical presence in the office, I need not decide that issue because Randolph sought to be placed on 100% telework as her

accommodation. No reasonable jury could find that Randolph was qualified for a position that required at least some physical presence in the office as an essential function.[3]

Randolph also requested reassignment to another position as a potential accommodation. A reasonable accommodation may include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). A plaintiff is otherwise qualified "if [s]he could perform the essential functions of [her] job once provided the reasonable accommodation of reassignment." *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020).

Cornelius testified that he never received Randolph's request for reassignment or her resumé. He also testified that there were no vacant positions available in the commuting area at the time. Randolph argues that she submitted the proper documentation and that Cornelius failed to investigate open positions and produce a data base reflecting available positions for which she was qualified. ECF No. 53-1 at 11. However, Randolph, who bears the burden of establishing her prima facie case, presents no evidence to counter Cornelius's assertion that there were no open positions in the area that she was qualified for at the time. Accordingly, no genuine dispute remains that Randolph was not otherwise qualified with or without a reasonable accommodation.

I grant the SBA's motion as to Randolph's reasonable accommodation claim. And because Randolph fails to establish her prima facie case, I deny her motion for partial summary judgment on this claim. Randolph's motion focused on the SBA's purported failure to engage in

---

[3] The SBA presented substantial evidence that it engaged in the interactive process with Randolph and that her accommodation request was not reasonable. Holguin, Cornelius, and an external federal agency reviewed Randolph's accommodation request for a 100% telework schedule. Cornelius also consulted with HR and the legal department. And while Randolph's accommodation request was pending, Cornelius allowed her to continue teleworking two days per week. Based on the evidence presented, it is difficult to see how a reasonable jury could find that Randolph's request to telework full time was reasonable and that the agency failed to engage in the interactive process. I need not reach the issue, however, because I grant the SBA's motion and deny Randolph's motion on other grounds.

13

the interactive process and to reasonably accommodate her disability, both of which are required only after an employee establishes that she was an otherwise qualified individual with a disability.

### C. Retaliation

Title VII prohibits retaliation by making it unlawful "for an employer to discriminate against any of [its] employees or applicants for employment . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). A federal employee may bring suit under Title VII's antiretaliation provision based on 42 U.S.C. § 2000e–16. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). To establish a prima facie case of retaliation, Randolph "must be able to show that she suffered an adverse employment action because she engaged in activity protected by the statute." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018).

"An action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at 1243. "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "[M]ere ostracism by co-workers does not constitute an adverse employment action." *Ray*, 217 F.3d. at 1241 (quotation omitted). However, a lateral transfer may constitute an adverse employment action in some circumstances. *Id.* "Context matters." *Burlington N. & Santa Fe Ry. Co., v. White*, 548 U.S. 53, 69 (2006).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer "to present legitimate reasons for the adverse employment action." *Brooks*, 229 F.3d at

928.  If the employer meets its burden, the plaintiff must then "demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext" for retaliation. *Id.* "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." *Ray*, 217 F.3d at 1244.  To prevail, Randolph must show that the retaliation was the but-for cause of the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Randolph alleges she engaged in protected activity when she voiced her concerns to Cornelius about preferential treatment in hiring of Hispanic men in the Nevada office.  For the purposes of its motion, the SBA assumes Randolph engaged in protected activity, but argues that she cannot demonstrate that the SBA took an adverse action because of that activity. ECF No. 52 at 15-16.  And it argues that most of the alleged adverse actions are time-barred. *Id.*  Randolph in response points to several adverse actions: (1) being removed of her essential duties as LBOS; (2) false allegations of poor work performance; (3) losing her supervisory role over Van Orden; and (4) receiving a poor quarterly evaluation. ECF No. 53 at 15-17, 20.[4]  And she argues that, prior to Lucero's hiring, she never received a poor performance rating and was considered a top BOS employee. *Id.* at 17.  She argues that these actions, which occurred in close proximity to her protected activity, show that any legitimate reason proffered by the SBA is pretext.

As discussed above, Randolph's alleged adverse actions are time-barred.  Randolph alleges she was removed as LBOS effective February 2015.  Van Orden was instructed not to receive assignments from Randolph in February 2015.  Randolph received a poor quarterly

---

[4] Randolph asserts these arguments to support her Rehabilitation Act and discrimination claims. I assume that she intended these arguments to also apply to her retaliation claim, though she does not provide a clear argument for that claim.

1  performance review in January 2015.  She notes that she was falsely accused of mishandling and
2  throwing away files, but that incident occurred prior to March 1, 2015. ECF No. 54-6 at 19.
3  While Randolph does not specifically address this in her response, out of an abundance of
4  caution I assume she also intended to identify as adverse actions her telework being rescinded
5  and alleged harassment by Holguin and Lucero.
6        Harassment may constitute an adverse employment action. *See Ray*, 217 F.3d at 1244-45.
7  But the harassment must create a hostile work environment that is "sufficiently severe or
8  pervasive to alter the conditions of the victim's employment and create an abusive working
9  environment." *Id.* 1245.  Randolph does not present evidence of harassing behavior other than
10 her general statement to her EEO investigator that Lucero and Holguin would put her down,
11 challenge her decisions, and isolate her from her peers. *See, e.g.,* ECF No. 54-6 at 51.  She does
12 not explain what words were used or how often the alleged harassment occurred so that a fact-
13 finder could determine the severity of the situation.  And Dr. Pratt's assertions that Randolph
14 was subjected to a hostile work environment, without more, provide no clarity.  Based on this
15 evidence, and the otherwise time-barred alleged adverse employment actions that Randolph
16 contends amounts to harassment, Randolph has not demonstrated that these incidents created an
17 environment sufficiently severe or pervasive to alter the conditions of her employment.
18 Accordingly, no reasonable jury could find that Randolph was subjected to a hostile work
19 environment in retaliation for engaging in protected activity.
20       Finally, assuming without deciding that rescinding an employee's telework arrangement
21 could be considered an adverse employment action, as I explained above the SBA had legitimate
22 reasons for doing so.  Randolph has not raised a genuine issue of material fact as to whether this
23 reason was pretext.  Randolph emailed Cornelius about her concerns regarding preferential

hiring of Hispanic men in October 2014.  Holguin suspended Randolph's telework (and gave her notice of the change so that she could adjust accordingly) on May 11, 2015.  In between that time, a review of the program revealed many issues that needed to be resolved.  Given the evidence presented, the proximity in time between the protected activity and adverse action does not support an inference of retaliatory motive. *See Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) (noting that timing needs to be considered in regard to its factual setting).

      Randolph has not met her burden of showing that the SBA's contention that she needed to be physically present to help bring the 8(a) program into compliance is pretext.  Holguin created a strike force, which brought in staff from other projects to help prepare for the internal audit.  The SBA has shown that physical presence was a necessary aspect of the job.  The physical files are maintained in the building.  Other employees on the strike force stated they did not use their ad hoc telework while working on the 8(a) program.  For example, Martin was tasked with reviewing the hard copy files to identify what documents were missing. ECF No. 56-20 at 4.  That had to be done in the office.  Further, Holguin suspended Randolph's telework arrangement temporarily and explained in his email to her what goals needed to be accomplished before her telework privileges could be reinstated.  And Randolph acknowledges there were issues with the 8(a) program.  Thus, no reasonable jury could find that Randolph's telework privileges were rescinded because she engaged in protected activity.  Accordingly, I grant the SBA's motion as to this claim.

      **D.  Race and Sex Discrimination**

      Title VII makes it unlawful for an employer to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  A plaintiff may establish a prima facie case of discrimination by showing (1) the

plaintiff belongs to a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) employees outside of her protected class with similar qualifications were treated more favorably. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  If the plaintiff makes out a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000).  "If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 1124 (internal quotation and citation omitted).

The SBA argues that Randolph was not performing to its legitimate expectations, she cannot show an adverse action that is not time-barred, and she cannot show that similarly situated employees were treated more favorably. ECF No. 52 at 16-17.  Randolph responds that the SBA's claim that she did not effectively do her job is pretext for discrimination because she was the only employee whose telework privileges were rescinded. ECF No. 53 at 17-18.

Even viewing the evidence in the light most favorable to Randolph and assuming that rescinding telework privileges constitutes an adverse employment action, no reasonable jury could find that the SBA discriminated against Randolph on the basis of race or sex.  Randolph has not met her burden of proving that the SBA treated her differently than similarly situated employees that do not belong to her protected class.  Randolph was the only employee assigned to the 8(a) program for years until Van Orden joined.  She remained the only LBOS as Van Orden entered the SBA as a BOS.  And Randolph was the only person utilizing a fixed telework

schedule in the Nevada office.  Therefore, even though she argues that she was the only person whose telework was rescinded, the SBA could not have treated other employees more favorably because no one was similarly situated to her. *See Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003) (noting "individuals are similarly situated when the have similar jobs and display similar conduct" and "[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees").

Additionally, the evidence presented shows that Randolph was not performing her job satisfactorily.  Lucero identified multiple problems with the program, as did Van Orden and Martin.  Randolph herself acknowledges that there were issues with the program, though she denies that the program's deficiencies were due to her mismanagement.  Martin, a lender relations specialist who joined the 8(a) program "strike force," stated there were many problems with the program, including that only one file had the correct financial information inputted into the system and financial and tax documents were missing. ECF No. 52-20 at 4.  He also stated that Randolph was invited to, but did not participate in, bringing the 8(a) program into compliance. *Id.* at 5.  Finally, he stated that Randolph falsified reports in 2013 and 2014 to indicate that ineligible or nonoperating businesses were still eligible for the program. *Id.* at 5-7. Randolph presents no evidence to counter the assertion that she falsified documents so that businesses could remain eligible for the program.  And Randolph presents no evidence to contradict the SBA's evidence of poor job performance, except that she had positive prior annual performance ratings.  But Lucero was hired and tasked with ensuring the program was in compliance for an internal audit, and he found issues with the program that previously went

unnoticed.  Even viewing the evidence in the light most favorable to Randolph, she fails her burden of establishing a prima facie case of discrimination.[5]

Further, there is no evidence to suggest that Holguin's act in suspending Randolph's telework privileges was motivated by race or sex.  Accordingly, I grant the SBA's motion as to Randolph's discrimination claim.

## III.  CONCLUSION

I THEREFORE ORDER that defendant Jovita Carranza's motion to file supplemental authority **(ECF No. 60) is DENIED as moot**.

I FURTHER ORDER that plaintiff Nanette Randolph's motion for partial summary judgment **(ECF No. 51) is DENIED**.

I FURTHER ORDER that defendant Jovita Carranza's motion for summary judgment **(ECF No. 52) is GRANTED**.  The clerk of court is instructed to enter judgment in favor of the defendant and against the plaintiff and to close this case.

DATED this 28th day of May, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[5] The SBA also argues that Randolph cannot claim she was constructively discharged from employment.  Randolph does not respond to this argument.  Randolph's complaint does not specifically assert a constructive discharge claim under Title VII.  Even so, a constructive discharge claim would fail because Randolph must first prove she was subject to discrimination.  *See Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016) ("A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign.").